Harry B. Frank, J.
Defendant wife moves to dismiss this action for divorce brought by plaintiff husband pursuant to subdivision (5) of section 170 of the Domestic Relations Law which, in its present form, provides that an action for divorce may be maintained by a husband or wife on the ground that ‘1 the husband and wife have lived apart pursuant to a decree or judgment of separation for a period of two years after the granting of such decree or judgment, and satisfactory proof has been submitted by the plaintiff that he or she has substantially performed all the terms and conditions of such decree or judgment.” Section 170, which significantly amended the Domestic Relations Law, was enacted in April, 1966 to take effect on September 1, 1967 (L. 1966, ch. 254, § 15).
The prior judgment of separation upon which this action is based was granted on August 14, 1964 in Westchester County. The successful plaintiff in such prior action was the wife, who is the defendant herein, and the husband, plaintiff herein, was the defendant in the separation action wherein he was adjudged guilty of cruel and inhuman treatment and nonsupport. The entry of such judgment having antedated the passage and effective date of the new divorce law, defendant wife seeks dismissal of the instant action on the ground that subdivision (5) cannot be retrospectively applied in an action brought by the party adjudged guilty in a decree or judgment of separation which was awarded prior to September 1, 1966. Such date, in distinction to the effective date of the statute, is accorded significance because of the proviso in section 15 of chapter 254 of the Laws of 1966 directing that ‘ ‘ the two year period specified in subdivisions five and six of section one hundred seventy * * * shall not be computed to include any period prior to September first, nineteen hundred sixty-six ”.
In light of the intense and ofttimes conflicting political, social and religious pressures attendant upon the enactment of the first major revision of the divorce law of this State since 1787, it was to be expected that the final version, spawned in political *414 pragmatism and compromise, might be afflicted with certain ambiguities and present various" problems upon its practical application. That the question of retroactivity of the statute to ‘ ‘ old ’ ’ decrees would pose one of the most plaguing of such problems became apparent shortly after the passage of the new statute and such issue has evoked extended comment and concern in legal circles. (See, for example, Foster and Freed, Comparison and Critique of Proposed Amendments to Divorce Reform Law, N. Y. L. J., March 29-30, 1967, p. 4, and references therein to various Bar Association and other reports relative to such problem. See, also, Gershenson, The Divorce Reform Law: A Brief for Retroactivity, N. Y. L. J., July 24-26, 1967 and Lesser, Amendment to Section 170, Domestic Relations Law, Called Unconstitutional, N. Y. L. J., Nov. 8, 1968, p. 1.)
The recent decision by Mr. Justice Korn of this court in Gleason v. Gleason (59 Misc 2d 96), presents a comprehensive review of many of the decisions at the trial court level in other counties which have dealt with the question at hand, and the divergent conclusions therein are some indication of the difficulties presented by such- issue. While ultimate resolution of the problem rests with our appellate courts, in the absence of any such definitive ruling at the present time, this court believes that the statute itself provides the answer.
It is a cardinal rule of statutory construction that the legislative intent is the great and controlling factor, and that such intention is to be determined primarily from the language of the statute under consideration (Department of Welfare of City of N. Y. v. Siebel, 6 N Y 2d 536, 543). Moreover, in determining legislative intent all parts of the statute under consideration are to be read and construed together and all should be harmonized with one another. (Levine v. Bornstein, 4 N Y 2d 241; People v. Ryan, 274 N. Y. 149.)
Irrespective of the highly publicized sociological clamor for 11 interring .dead marriages ’ ’ and eliminating fault concepts in matrimonial litigation, and the erroneous impression which proponents of such view may have created by their extravagant characterizations of section 170 as falling within such framework, reference to the statute which was actually enacted demonstrates the infirmity of any such categorization. The language of section 170 makes clear that, with one exception, it is entirely fault-oriented and is primarily designed to afford relief to an innocent spouse where specified marital misconduct has occurred. The first four subdivisions of section 170 are expressly predicated upon the misconduct or fault of one of the marital partners and can serve as the basis of an action *415 only at the behest of the innocent spouse. While subdivisions (5) and (6) have frequently been lumped together as the “ conversion ” grounds, and much heralded as “ non-fault ” and “ living apart ” grounds, such appraisals do not withstand analysis. Although subdivision (5) does permit either spouse to bring an action for divorce where the parties have lived apart pursuant to a decree of separation for at least two years, the sine qua non of such action is the underlying separation decree. Since such separation decree may in the first crucial instance be obtained only by an innocent spouse for specified “fault” grounds (see Domestico Relations Law, § 200), subdivision (5), too, irrespective of its subsequent procedural format, is in a most real sense fault-oriented (cf. analysis in Wadlington, Divorce Without Fault, 52 Va. L. Rev. 32, 55). Such subdivision may be utilized, at all, only if the innocent spouse in the first instance chooses to obtain a separation decree or judgment. If the innocent spouse chooses not torso proceed, subdivision (5) is wholly unavailable to the guilty spouse. The only provision of the new divorce law which may be said to fall outside of the fault orbit is subdivision (6) which is predicated upon living apart pursuant to a separation agreement, but significantly such provision can be operative only upon consent of both marital partners through the medium of a properly executed agreement. Absent the consent of either spouse to such an agreement, subdivision (6) can afford no relief.
The foregoing demonstrates that under the new divorce statute, absent consent of both parties pursuant to subdivision (6), the option to initiate proceedings which will culminate in a divorce lies exclusively with the innocent spouse. Thus an innocent spouse, having grounds, is free to make a choice between instituting an action for divorce or separation, with its predictable consequences, or alternatively either taking no action whatsoever or seeking any necessary relief through other available agencies such as the Family Court. If the innocent party should choose the latter alternatives, the guilty party would be wholly without recourse to any of the provisions of section 170, including subdivision (5), and would be powerless to obtain a dissolution of the marriage in this State.
In light of the clearly expressed statutory intent to allow the innocent spouse the right to choose at the outset whether or not ultimate termination of the marriage will be permitted, a construction of the statute which would give rise to a wholly contrary result cannot be sustained. Such untoward result would, however, ensue if subdivision (5) were retroactively applied in an action brought by the spouse adjudged guilty *416 in an “ old ’ ’ decree or judgment of separation entered prior to September 1, 1966.
Obviously, at the time that the innocent spouse sought an “ old ” decree, it was not contemplated that such decree could subsequently serve as the basis for a divorce action by the guilty party. Under the law then existing the separation action was merely a medium by which the innocent spouse could secure support and/or a regulation of the duties and obligations of the parties toward each other, without dissolving the marital relation (see Matter of Levine, 194 Misc. 518) or affecting such spouse’s eligibility for future property benefits which continuation of the marital state might bring (see Matter of Smith, 243 App. Div. 348; Decedent Estate Law, former § 18, subd. 3). As hereinbefore indicated, an innocent spouse can still achieve the same result under the present law by the simple expedient of not seeking a divorce or separation, but rather seeking relief, where necessary, under the jurisdiction of the Family Court. Whether to proceed in such manner, dehors section 170, which would preserve the marital relation, or by way of separation action, which could serve as a basis for final dissolution of the marriage, is a choice which lies exclusively with the innocent spouse.
This “ right of choice ” which is available to the innocent spouse is of considerable significance. While it is clear that religious considerations, a spouse’s inchoate inheritance rights, and other related economic benefits such as those under social security, pension and group health plans, are neither “vested rights” (see Newman v. Dore, 275 N. Y. 371; Irving Trust Co. v. Day, 314 U. S. 556; cf. Flemming v. Nestor, 363 U. S. 603) nor otherwise constitutionally protected for purposes of defeating" divorce legislation, such considerations are nonetheless recognized to have great meaning and importance in a practical sense (see, for example, Report of Special Committee on Matrimonial Law, N. Y. County Lawyers’ Assn., 24 Bar Bull. 62, 66-67 [1966]). The Legislature has manifested its sympathetic recognition of these practical considerations by drafting section 170 in a manner which gives the innocent spouse, if so disposed, an opportunity to preserve the various rights contingent upon continuation of the marital state by permitting such party to choose a course of action which will effectively preclude any recourse to subdivision (5) by the guilty spouse. That such alternative choice is meant to be available to an innocent spouse in a real, and not merely a theoretical, sense becomes apparent when viewed in light of the Legisla *417 ture’s prior enlargement of the services and jurisdiction of the Family Court.
In view of the available alternatives, a separation action instituted after the effective date of the new divorce law represents a free choice made by the innocent spouse with full recognition of the potential practical consequences thereof, and is in effect a tacit consent by such spouse to divorce proceedings which may thereafter ensue under subdivision (5). No such knowledgeable choice, however, was, or could have been made by an innocent spouse in an “ old ” separation action, brought prior to the statute, since no “ conversion ” ground then existed. If subdivision (5) were now to be applied retrospectively at the behest of the party adjudged guilty in an “ old ” action it would permit such guilty party to unilaterally bring about a termination of the marriage, and the various rights contingent thereon, over the objection of the innocent spouse and without ever having afforded the innocent spouse a right to exercise any choice in that regard. Such result is directly contrary to the manner in which the statute is intended to operate. Upon a prospective application of the statute, subdivision (5) could never ultimately be available unless the innocent spouse is agreeable thereto since it is the innocent spouse, and the innocent spouse alone, who controls the initial crucial decision — i.e., the underlying separation action. If the innocent spouse should choose not to obtain such decree there is no way in which the guilty spouse can unilaterally initiate the proceedings necessary to make subdivision (5) operative for purposes of terminating the marriage. To apply such subdivision retroactively in a manner which would give rise to a completely converse result — i.e., that of permitting the guilty spouse to unilaterally bring about termination of the marriage while depriving the innocent spouse of any choice in that regard — would lead to an absurdity and do violence to the intent clearly expressed in the statute (see People v. Ryan, 274 N. Y. 149). Such .retrospective application of the subdivision would, moreover, arbitrarily deny to that group of innocent spouses who successfully obtained separation decrees prior to the statute, when no foreseeable adverse consequences could attach thereto, the ‘ ‘ right of choice ’ ’ which is available to all innocent spouses under the statute. There is no rational basis for any such exclusion and an application of the statute which would arbitrarily deprive only this particular group of innocent spouses of such 11 right of choice, ’ ’ and the considerations attendant thereon, would clearly be discriminatory and might *418 well constitute an unequal application of the law having constitutional implications (cf. Matter of Barry Equity Corp. [Marcia Hat Co.], 276 App. Div. 685; Hauser v. North British & Mercantile Ins. Co., 206 N. Y. 455).
In urging the retroactive application of subdivision (5) to the instant case great stress is placed on the Legislature’s recent failure to amend such subdivision so as to expressly limit its application to separation decrees granted after September 1, 1966.
It is argued that the Legislature’s failure to take such action at the time that it amended subdivision (6) to restrict such provision’s applicability to agreements acknowledged on or after August 1, 1966 (see L. 1968, ch. 700) clearly establishes a legislative intent for retroactivity of subdivision (5). While the failure to amend in that regard does demonstrate a legislative intent to construe the provision as retroactive (cf. Kaplan v. Kaplan, 31 A D 2d 247), such action must be viewed in light of the purposes and intention manifested in the over-all statute. If the Legislature had restricted the application of subdivision (5) in a fashion similar to its treatment of subdivision (6), the result would have been to preclude all “ conversion ” actions on “ old ” decrees, whether brought by the innocent spouse or the guilty spouse. But there is no reason why an innocent spouse who obtained a separation decree prior to the statute, the only relief then available for the misconduct involved, should not now be able to convert such decree in accordance with the expanded relief afforded by the statute. There are none of the impediments to such “ conversion ” as would exist in the case of the guilty party to such decree. On the contrary, since the statute is designed to permit the innocent spouse to make the crucial choice as to whether subdivision (5) will be ultimately available, there is no valid reason for excluding innocent spouses who obtained ‘ ‘ old ’ ’ decrees from affirmatively exercising such option. Indeed, to preclude such group of innocent spouses from converting “ old” decrees would serve to arbitrarily deprive them of the additional remedy which is now available to all innocent spouses for further, redress of the wrongful conduct upon which the original decree was granted. Any such exclusion would unreasonably discriminate against such group of innocent spouses and would run counter to the liberalized intent of the statute. By leaving subdivision (5) open to retroactive application, the Legislature has made it possible for innocent spouses who obtained “ old ” separation decrees to proceed under such provision, and, if so disposed, avail themselves of the further remedy which has been made *419 available thereunder. The crux of the matter is that the issue of retroactivity cannot be viewed as an unqualified absolute in terms of the separation decree, as such, but must rather be viewed in a dual aspect in light of the rights and standing under the statute of the particular spouse seeking to assert the decree in question. (Cf. Kaplan v. Kaplan, supra, p. 250, n.) It is only in this way that the legislative intent expressed in the statute can fully and harmoniously be carried out.
The two-faceted conclusion that subdivision (5) may be retroactively applied to “ old ” decrees in cases brought by innocent spouses, but must be applied prospectively only in actions instituted by a guilty spouse, is wholly consonant with well-settled rules of statutory construction of which it may be assumed the Legislature was mindful.
While as a general rule statutes are to be construed as prospective only, remedial statutes constitute an exception to such general rule. (See McKinney’s Cons. Laws of N. Y. Book 1, Statutes, § 54.) Remedial statutes in such context are those which involve changes of procedure —i.e., of the form of remedies, (see Jacobus v. Colgate, 217 N. Y. 235), which provide a new remedy for an existing wrong (Shielcrawt v. Moffett, 294 N. Y. 180). Insofar as subdivision (5) makes available the further remedy of divorce to an innocent spouse who had initially obtained a separation decree predicated upon the other spouse’s misconduct such statute is clearly remedial in the sense of the exception. There was a remedy already available to such innocent party even prior to. the enactment of the statute — i.e., a separation action. With respect to such party, subdivision (5) merely provided an additional remedy by way of divorce, that is, it has enlarged the remedy by now making two remedies available to the innocent party where formerly there was only one. (See Matter of Berkovitz v. Arbib & Houlberg, 230 N. Y. 261.) Where the legislation has such effect, it will generally be applied retrospectively (Shielcrawt v. Moffett, supra).
A wholly different rule applies, however, where prior to the statute there had been no remedy whatsoever. To supply a remedy where previously there was none of any kind is to create a right of action, and where the statute defines such remedial right in the first instance it should be given prospective application only. (See Jacobus v. Colgate, supra; Shielcrawt v. Moffett, supra; McKinney’s Cons. Laws of N. Y., Book 1, Statutes, § 54.) This, of course, precisely describes the situation under subdivision (5) with respect to a guilty spouse. Prior to the enactment of the statute a guilty spouse in this State *420 had no rights or remedy of any kind with respect to alteration or modification of the marital relation. (See Domestic Relations Law, former §§ 170 and 200; cf. Domestic Relations Law, § 8.) Insofar as subdivision (5) permits a guilty party to bring an action for divorce predicated upon living apart under a decree or judgment of separation it creates a wholly new cause of action. That is, it supplies a remedy where the party had never perviously had any remedy whatsoever. Where the statute creates such a wholly new cause of action, it should be applied prospectively only.
Thus, in the instant case, where the cause of action asserted by the plaintiff is one that was newly created by subdivision (5) the rights thereunder should be given prospective application only, that is, they may be asserted only with respect to separation decrees entered subsequent to the effective date of the statute. While this court is disposed to use September 1, 1966 as the operative date in light of the passage of the statute in April, 1966 and the previously noted proviso contained in section 15 of chapter 254 of the Laws of 1966, whether such date is used or whether 'September 1, 1967, the date under the aforesaid section when “ the act shall take effect,” is held to be the effective date, is of little significance in the instant case since the decree relied upon was entered long before either such date.
The court having concluded that subdivision (5) of section 170 cannot be retrospectively applied in an action brought by the party adjudged guilty in a decree of separation entered prior to the effective date of said statutory provision, defendant’s motion is granted and the complaint herein is dismissed.